UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| AMEENJOHN STANIKZY;<br><br>       Plaintiff,<br><br>  v.<br><br>PROGRESSIVE DIRECT AUTO<br>INSURANCE COMPANY;<br><br>       Defendant. | NO.<br><br>CLASS ACTION COMPLAINT FOR<br>BREACH OF CONTRACT, VIOLATION OF<br>WASHINGTON CONSUMER<br>PROTECTION ACT, DECLARATORY &<br>INJUNCTIVE RELIEF<br><br>WITH JURY DEMAND |

COMES NOW AMEENJOHN STANIKZY, the above-named Plaintiff, as the proposed

Class Representative, for causes of action for breach of contract and violation of the Washington

Consumer Protection Act ("WCPA") against the above-named Defendant, PROGRESSIVE

DIRECT AUTO INSURANCE COMPANY (hereinafter "Defendant" or "PROGRESSIVE,")

alleges as follows:

## I. INTRODUCTION

1.1     This action seeks to recover damages suffered by the Plaintiff, and the Members

of the proposed Class (collectively "Class Members") all insureds of the Defendant within the

State of Washington, as a result of the Defendant's claims handling practice with respect to

paying total loss claims to its own insureds under PROGRESSIVE's First-Party Private

Passenger Auto Physical Damage Coverages (Collision, Comprehensive, and Underinsured

<u>CLASS ACTION COMPLAINT</u> - 1

Law Offices of<br>STEPHEN M. HANSEN, P.S.<br>1821 Dock Street, Suite 103<br>Tacoma Washington 98402<br>(253) 302-5955; (253) 301-1147 Fax

1  Motorist Property Damage, collectively "first party APD coverage").  This Proposed Class

2  Action challenges the common method used by PROGRESSIVE to determine *the amount it will*

3
4  *pay* after PROGRESSIVE had determined, *after its own investigation* (for every member of the

5  proposed Class) that its insureds' vehicles were total losses which were covered under their first

6  party APD coverages.  Having already made a determination that first party APD coverage

7  applied and the insured's vehicle was a total loss for each and every Class Member,

8  PROGRESSIVE was then <u>required</u> to determine the "actual cash value" ("ACV") to be paid to

9  the Class Member in compliance with the applicable binding regulatory provision, Washington

10
11  Administrative Code ("WAC"), § 284-30-391 ("§391")("the insurer must adjust and settle

12  vehicle total losses using the methods set forth in subsections (1) through (3) of this section.

13  Subsections (4) through (6) of this section establish standards of practice for the settlement of

14  total loss vehicle claims").

15         1.2     In paying <u>every</u> total loss claim that falls within the proposed Class (and nearly all

16
17  first-party total loss claims) PROGRESSIVE uses a "Market Survey Report" (hereafter "MSR")[1]

18  prepared for PROGRESSIVE by a vender, Mitchell International Inc. ("Mitchell") to determine

19  what PROGRESSIVE tells its insured is the purported ACV of the insured's totaled vehicle as of

20  the date of the loss.  Mitchell prepares the MSR following PROGRESSIVE's directions, and

21  then PROGRESSIVE informs the Class Member/insured of the ACV Progressive will pay,

22
23  *which is the purported ACV shown on the MSR*.  This ACV figure is provided in the usual course

24  to Class Members by phone, e-mail, or letter.  In nearly all cases, <u>only</u> the ACV figure is

25  provided, the underlying MSR report is not provided to the insured as part of PROGRESSIVE's

26

27  [1] The title of the reports, "Market Survey Report" at the time of the October 23, 2019 report generated on Plaintiff's

28  vehicle, has varied slightly over time, including being titled "Vehicle Valuation Report" on certain reports in 2018.

CLASS ACTION COMPLAINT - 2

common claims practice.  On information and belief, PROGRESSIVE only provides the underlying MSR report when the insured expressly requests a copy.

1.3     Under WAC § 284-30-380(7) PROGRESSIVE is legally responsible for "the accuracy of evaluations to determine actual cash value" it uses under §391.  However, for every Class Member (each of which can be identified by reviewing the actual reports and electronic data that PROGRESSIVE has or can access from its vender Mitchell) the MSR report PROGRESSIVE used to establish ACV took an <u>unsupported</u>, <u>impermissible</u> and <u>unverifiable</u> "adjustment" (*which is always a deduction*; i.e. resulting *reduction* in the ACV that PROGRESSIVE PAYS) for what the MSR as a "Projected Sold Adjustment".[2]  This unsupported, impermissible and unverifiable deduction is used to reduce the price of each of the comparable vehicles on the report, which because the price of comparable vehicles are then averaged to reach a "base value" upon which the ACV is determined, results in a substantial deduction (on information and belief on average approximately 6.5% across Class Members' total loss valuations[3]) in the ACV upon which PROGRESSIVE bases its payments to its insureds.

1.4     The MSR used to determine what PROGRESSIVE paid Mr. Stanizky on the total loss of his 2007 Lexus GS 350 4 Door Sedan 3.5 AWD illustrates how this "adjustment" to ACV works in PROGRESSIVE's favor:

(a)     The first page of the October 23, 2019 report listed what PROGRESSIVE will pay:

---

TThe slight variations in title are not relevant to the claims at issue in this lawsuit, and for clarity all of the reports at issue are simply called "Mitchell Market Survey Reports" or "MSR" throughout  this Complaint.

[2] As the MSR given to Mr. Stanizky when he requested it states in the fine print on page 6: "Projected Sold Adjustment - an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price)."

[3] It is possible that the Mitchell deduction is, on average, greater than this.   Discovery, and a sampling of claims, will be able to easily establish the amounts and averages for the deductions taken.

<u>CLASS ACTION COMPLAINT</u> - 3

Law Offices of
STEPHEN M. HANSEN, P.S.
1821 Dock Street, Suite 103
Tacoma Washington 98402
(253) 302-5955; (253) 301-1147 Fax

Valuation Summary
_____

**Loss Vehicle Adjustments**
Adjustments specific to your vehicle

| | |
|---|---|
| Base Value = | $8,131.00 |
| Condition - | $493.35 |
| Prior Damage | $0.00 |
| Aftermarket Parts | $0.00 |
| Refurbishment | $0.00 |
| Market Value = | $7,637.65 |

**Settlement Adjustments**
Adjustments specific to your policy

| | |
|---|---|
| (8.100%) Tax + | $618.65 |
| Deductible - | $250.00 |
| Settlement Value = | $8,006.30 |

## Settlement Value:
## $8,006.30

The ACV used to settle Mr. Stanizky's total loss is the "Market Value":  $7,637.65, which is in turn based upon a "Base Value" (of $8,131.00) that PROGRESSIVE has determined by *averaging* the prices of what it claims are comparable vehicles.[4]

(b).     The vehicles used to determine this "Base Value" are then listed in chart form on page 3 of the report:

_____

[4] As PROGRESSIVE's form letter to Plaintiff on November 5, 2019 - the same day they conveyed the ACV they would pay – stated:

This letter is to confirm our email conversation of November 5, 2019 wherein we discussed our evaluation for the total loss of your 2007 Lexus GS 350 . This evaluation is based on a local market search of the selling price of like, kind, and quality vehicles. A copy of the evaluation is enclosed. The final amount includes the following:

| | |
|---|---|
| Actual Cash Value: | $7,637.65 |
| Tax: (except on leased vehicles) | $618.65 |
| Fees: | $181.64 |
| SUBTOTAL: | $8,437.94 |
| Less Deductible: | $250.00 |
| Less Salvage: | $1,810.12 |
| NET BALANCE: | $6,377.82 |

CLASS ACTION COMPLAINT - 4

**Comparable Vehicle Information**

Search Radius used for this valuation: 957 miles from loss vehicle zip/postal code.
Typical Mileage for this vehicle: 117,000 miles

| # | Vehicle Description | Mileage | Location | Distance From Loss Vehicle | Price | Adjusted Value |
|---|---|---|---|---|---|---|
| 1 | 2007 Lexus GS 350   4 Door Sedan 6 3.5CYL GAS A RWD | 127,970 | 95821 | 598 miles | $10,995.00 List Price | $7,764.80 |
| 2 | 2007 Lexus GS 350   4 Door Sedan 6 3.5CYL GAS A RWD | 159,278 | 85009 | 957 miles | $8,999.00 List Price | $8,497.19 |
| | | | | | Base Value: | $8,131.00 |

The "Base Value" is simply the *average* of the "Adjusted Value" of the comparable vehicles listed on the report.

(c).      One has to go to the fine print on pages 5 and 6 to find a breakdown of the adjustments (i.e. the "deductions and additions") used by PROGRESSIVE to reach the "Adjusted Values" listed on the chart on page 3:

**2007 Lexus GS 350   4 Door Sedan 6 3.5 CYL GAS ARWD**                    List Price:  $10,99

| | | | | |
|---|---|---|---|---|
| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
| JTHBE96S570012404 | 2251 | 10/22/2019 | 95821 | 598 miles |

Source

INDEPENDENT DEALER WEB LISTING
PETROL AUTO SALES
2797 FULTON AVE
Sacramento CA 95821
916-560-1926

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$1,109.40 |
| Vehicle Configuration Adjustment | | | $317.65 |
| Mileage | 155,331 | 127,970 | -$1,203.23 |
| Equipment | | | |
| ALL WEATHER MATS | Yes | No | $21.92 |
| MARK LEVINSON AUDIO SYSTEM W/NAVIGATION SYSTEM | No | Yes | -$803.42 |
| NAVIGATION SYSTEM | No | Yes | -$409.46 |
| REAR SPOILER | No | Yes | -$44.26 |
| | | Total Adjustments: | -$3,230.20 |
| | | Adjusted Price: | $7,764.80 |

**2   2007 Lexus GS 350   4 Door Sedan 6 3.5 CYL GAS ARWD**                    List Price:  $8,999.00

| | | | | |
|---|---|---|---|---|
| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
| JTHBE96S570023533 | | 10/22/2019 | 85009 | 957 miles |

Source

INDEPENDENT DEALER WEB LISTING
IN POWER MOTORS
2301 W BUCKEYE RD
Phoenix AZ 85009
602-975-4883

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$908.00 |
| Vehicle Configuration Adjustment | | | $259.99 |
| Mileage | 155,331 | 159,278 | $128.26 |
| Equipment | | | |
| ALL WEATHER MATS | Yes | No | $17.94 |
| | | Total Adjustments: | -$501.81 |
| | | Adjusted Price: | $8,497.19 |

1.5      If a PROGRESSIVE insured had requested a copy of the underlying MSR Report, carefully read this fine print, and were knowledgeable enough to know what was required by

CLASS ACTION COMPLAINT - 5

1   WAC § 284-30-391, they would see that PROGRESSIVE had adjusted the loss vehicle for

2   "condition" (see point (a)) and each of the comparable vehicle's prices to reflect equipment and

3   mileage (see point (c)).[5]   This is expressly allowed by §391(4) which <u>requires</u> that:

4

5   the insurer must… (b) Base all offers on itemized and verifiable dollar amounts
    for vehicles that are currently available, or were available within ninety days of
6   the date of loss, using appropriate deductions or additions for options, mileage or
    condition when determining comparability.

7

8   A deduction (which must be for "itemized and verifiable dollar amounts") for "Projected Sold

9   Adjustment" is not permitted under §391(4).  And unlike the deductions for mileage or options –

10  which is itemized and can be verified and checked by the insured, where the "Projected Sold

11  Adjustment" deduction  - *and it is always a deduction* – comes from and how it can be verified

12  by the insured is unstated.

13

14      1.6     If the insured were to see the deduction for " Projected Sold Adjustment" in the

15  fine print and then further read §391, they would also see that the only other "adjustments" to

16  total losses allowed under §391(5) were for unrepaired prior damage and the value of a retained

17  salvage vehicle.  (See §391(5) ("Insurers may adjust a total loss settlement through the following

18  methods only: [listing unrepaired damage and salvage value]")).  <u>Must</u> and <u>only</u> are words that

19  do not allow PROGRESSIVE to take additional hidden deductions, let alone ones that are not

20

21  explained and can not be verified by the insured or for that matter anyone.

22  ───────────────────

23  [5] Because it is not self-explanatory, when the comparable vehicle has a higher mileage than the insured vehicle (here
    Mr. Stanizky's vehicle had 155,331 miles on it), the mileage adjustment to the comparable' s price is <u>positive</u>,
24  raising its price (e.g. the second comp had 159,278 miles, and shows an addition of $128.26) to reflect what the
    vehicle's price would have been with similar mileage.  In turn, when the comparable has lower mileage the mileage
25  adjustment to the comparable' s price is <u>negative</u>, lowering its price. (e.g. the first comp had 127,970 miles, and
    shows a deduction of $1,203.23).

26   Plaintiff further notes that both vehicles list a "Vehicle Configuration Adjustment" which reflects according to the
    report's fine print the trim level.  While not specified on Mr. Stanizky's report, on information and belief this
27  adjustment appears to reflects that Mr. Stanizky's 2007 Lexus GS350 was the all-wheel drive (AWD) version while
    both of the comparable vehicles used by PROGRESSIVE to value the loss were rear-wheel drive vehicles (RWD).

28

<u>CLASS ACTION COMPLAINT</u> - 6

LAW OFFICES OF
STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA WASHINGTON 98402
(253) 302-5955; (253) 301-1147 FAX

1.7     Additionally, and entirely unknowable to any Class Member, not only is a deduction for "Projected Sold Adjustment" impermissible under §391[6], but *how* the deduction is determined by Mitchell's "black box" formula further violates the requirements of §391.  In addition to specifying what adjustments can be taken to vehicle valuations, the WAC requires the insurer to use prices that are both local and "current data" in valuing a total loss.  The timeliness requirement, repeatedly stated in §391, requires prices to be for vehicle that are or were *available* within 90 days of the date of the loss.  See e.g. §391(2)(b)(iv)(C), §391(4)(b), see also WAC 284-30-320(4).  Further, the prices used to value the total loss must be for vehicles that use "current data" and were within a "reasonable distance of the principally garaged area, not to exceed one hundred fifty miles."  §391(2)(b)(iii), §391(2)(b)(iv)(B), §391(2)(b)(v).[7]

1.8     Upon information and belief the "Projected Sales Adjustment" taken by PROGRESSIVE is not based upon either local, or current data, as required by §391.  Instead,

_____

[6] Plaintiff notes that he is not pleading that an actual *verifiable* market clearing retail sale price can't be used in valuating a total loss if they can be obtained (in the usual course they can't be obtained) .  What violates §391 is taking an unauthorized and unverifiable further deduction from the actual verifiable prices of vehicles which reflect current data.

Plaintiff further notes that §391(2)(ii) allows an insurer to contact two "licensed dealer" who are within 150 miles of the loss, and obtain quotes for the price at which they would sell an in-stock comparable vehicle.  This price might reflect (or might not) some negotiation, however, that is not what PROGRESSIVE did on the claims of Class Members.

PROGRESSIVE's taking an unauthorized "projected sale adjustment" is simply a hidden effort to "end run" the requirements of  §391 so as to obtain far lower and artificial ACV figures at which they then pay total losses than they would have obtained had they complied with §391.

[7] §391(2)(b)(v) states that "If no comparable motor vehicles can be located within one hundred fifty miles, the search area may be expanded with the agreement of the first party claimant."

The report PROGRESSIVE provided Plaintiff listed only vehicles in Sacramento California and Phoenix Arizona, both well outside of the 150-mile limits established by §391.   PROGRESSIVE never sought nor obtained Plaintiff's agreement to use vehicles far more than 150 miles from his location, which was itself a violation of WAC §391. Notably, in only looking at vehicles that were 588 and 957 miles away, PROGRESSIVE did not bother to look at a 2007 Lexus GS 350 AWD – Plaintiff's exact vehicle, unlike the rear wheel drive vehicles it used to value the loss – which was not only for sale in Lynwood Washington  in the ninety day window for current data, but had a much higher price ($9663) once adjusted for the difference in mileage than those PROGRESSIVE cherry picked to get a lower value.

CLASS ACTION COMPLAINT - 7

Law Offices of
STEPHEN M. HANSEN, P.S.
1821 Dock Street, Suite 103
Tacoma Washington 98402
(253) 302-5955; (253) 301-1147 Fax

upon information and belief, Mitchell has obtained national data reflecting the prices reported to State DMVs as to the cash component of the transaction (i.e. what is taxable), and compared this to what they believe to be the listed price for the same vehicle from there data base.  The difference in these figures is then claimed to be the reduction in price due to negotiation.

1.9     However, the prices reported to State DMVs frequently do not reflect the actual sales price either because a trade was taken on the vehicle (and as such the actual price was higher than is reported) or because the cash portion of the price was reported as lower than it was so as to avoid paying taxes.[8]  As such, the actual figures claimed by PROGRESSIVE as a "Projected Sales Adjustment" dramatically overstate any average negotiation on vehicles.

1.10    Further, the figures used to calculate the "Projected Sales Adjustment" are not based upon reported sales within 90 days of the date of loss, or vehicles sold within 150 miles of the place of loss as required by §391, but rather upon information and belief, national data gathered over a much longer period of time.  Similarly, and contrary to the requirements of §391, the unauthorized adjustment is not based upon sales of comparable motor vehicles as required by §391 [9], but upon all vehicles, without regard to year, make, model, style, or time of year.

1.11    Upon information and belief, the "Projected Sales Adjustment" is simply an unsupported assertion that (regardless of vehicle year, make, model, style, or time of year) vehicles at a particular price point will have a set reduction in price, based simply on the vehicle's asking price.  The assumption behind the unauthorized deduction taking by PROGRESSIVE defies both common sense and how the automobile market actually works.

---

[8] To give an example, if a vehicle was advertised for $10,000 according to Mitchell, and it was actually sold for $8500 and a $1000 trade-in-on another vehicle, the sale would be reported as $8500 (and Mitchell would record that as a 15% sold adjustment) rather than what it actually was, a 5% adjustment.

[9] Comparable Motor Vehicle is a defined term in the WAC, and "means a vehicle that is the same make and model, of the same or newer model year, similar body style, with similar options and mileage as the loss vehicle and in

CLASS ACTION COMPLAINT - 8

LAW OFFICES OF
STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA WASHINGTON 98402
(253) 302-5955; (253) 301-1147 FAX

Even if PROGRESSIVE were allowed (for sake of argument) to take a "Projected Sales Adjustment" under §391, the way that PROGRESSIVE has determines the adjustment violates the express requirements of §391 as to what data can be used, and the deduction cannot in any event be verified as §391 requires, nor is it based upon "available" vehicles as required.

1.12    In summary, the ACV which PROGRESSIVE provides to Class Members to settle their total loss, based upon the MSR reports with improper deductions for "Projected Sold Adjustment" is in each case substantially lower than the valuation that would have been offered had §391 been followed.  PROGRESSIVE, in providing valuations which did not comply with §391 breached its contract (because the WAC provisions are incorporated into PROGRESSIVE's policy and failure to adhere to them constitutes breach of contract) and has engaged in an unfair/deceptive act/practice under the Washington Consumer Protection Act, RCW 19.86 *et seq*.

1.13    These standards are incorporated by law and the standard of care applicable to insurers into PROGRESSIVE's contractual obligations to its insureds, and the failure to adhere to them is a breach of contract under Washington Law.  See e.g. *Van Noy v. State Farm Mut. Ins. Co.*, 98 Wn. App. 487, 983 P.2d 1129 (1999).

## II. COMMON FACTS UNDERLYING THE CLAIMS AT ISSUE

2.1    On October 9, 2019, Plaintiff was involved in a collision while insured by Defendant.  Plaintiff's automobile, a 2007 Lexus GS 350 AWD, was damaged.  Plaintiff reported the claim to PROGRESSIVE, which constant with its common claims handling practices, determined all issues of fault as well as which coverages applied to Plaintiff's property damage loss.[10]  In reporting the claim, Plaintiff as did members of the proposed class, requested that

---

similar overall condition, as established by current data."  WAC § 284-30-320(3).
[10] The language of the relevant 1st party Comprehensive, Collision, Uninsured and Underinsured property damage

LAW OFFICES OF
STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA WASHINGTON 98402
(253) 302-5955; (253) 301-1147 FAX

PROGRESSIVE compensate him for the damage to the vehicle pursuant to Plaintiff's insuring

agreement with PROGRESSIVE if coverage existed.  PROGRESSIVE fully investigated the

facts of the claim, determined fault, and any comparative liability, and pursuant to its common

claims handling practice which applies equally to all Class Members, determined the estimated

cost of repairs to Plaintiff's vehicle.  Based upon its investigation, PROGRESSIVE then elected

to declare the Lexus a total loss, as it similarly declared the vehicles of all members of the

proposed Class to be total losses.  These determinations – made solely by PROGRESSIVE -

entitled Plaintiff and members of the proposed Class to the benefits available under the insuring

agreement and Washington Law for payment of total losses, and nothing further was required

from Plaintiff or members of the proposed Class to obtain these benefits.

2.2     As it does on <u>every</u> first party total loss claim *that is within the proposed Class*,

PROGRESSIVE provided information on the loss vehicle to Mitchell, and requested a Mitchell

Market Survey Report be prepared on the loss.  The report prepared for PROGRESSIVE as with

the October 23, 2019 MSR report done on Plaintiff's vehicle, took a substantial hidden

"Projected Sold Adjustment" deduction from each comparable motor vehicle used to value the

loss.   As a result, the ACV shown on the MSR report is substantially less (on information and

belief averaging around 6.5% less) than it would have been had the improper deduction not been

taken.  PROGRESSIVE retains a copy of the MSR report in the claims file, and can obtain them

from Mitchell, as well as obtain data from the MSR reports from Mitchell.

2.3     PROGRESSIVE then, as it did with Plaintiff, informs the insured via phone or e-

mail or a letter (on information and belief using template language) that PROGRESSIVE will

---

coverages in the State of Washington (collectively "first party property damage coverages") has been identical
during the proposed Class period, and they all involve materially identical contractual obligations as it relates to

Law Offices of
STEPHEN M. HANSEN, P.S.
1821 Dock Street, Suite 103
Tacoma Washington 98402
(253) 302-5955; (253) 301-1147 Fax

pay the ACV shown on the MSR report.   In doing so, PROGRESSIVE does not inform the insured that the ACV has been reduced due to a "Projected Sold Adjustment" nor that such a reduction is not authorized by §391.  An insured would only learn of the adjustment for a "Projected Sold Adjustment" if he/she requested the MSR report and read the fine print. PROGRESSIVE makes no disclosure of the deduction for "Projected Sold Adjustment" and on information and belief provides no information that its employees can provide to insureds as to exactly how the deduction was determined or how it can be verified.

2.4    If an insured objects to, or raises questions about, the ACV PROGRESSIVE has provided based upon the MSR report, PROGRESSIVE asks them to submit any further information, and will note and incorporate in their claims file any information that they submit.[11] In the *unusual* situation where PROGRESSIVE then agrees with a valuation *proved by its insured* to pay the total loss (which fall outside of the proposed Class) they will fully document the claims file with the information provided by the insured, the agreement to settle the loss based upon that valuation, or a valuation using a different method than the MSR report, and in particular expressly noting, *as required by §391,* where the loss amount was valued using a method which does not comply with §391's methods, that an agreement to use a non-§391 valuation was reached with the insured.

2.5    Consistent with its common practice, PROGRESSIVE's employee, located at its Washington claims office in Federal Way, Washington, told Plaintiff it would pay the sum of $8,006.30 for his totaled vehicle[12], based upon a "Market Value" calculated by PROGRESSIVE

---

paying total loss claims.

[11] PROGRESSIVE will also request a revised MSR report – which will in turn also take a deduction for "Projected Sold Adjustment" if the insured provides any different information as to the loss vehicle. The Claims file and PROGRESSIVE's electronic data allows identification of which MSR report was used to pay the claim, and in turn how much PROGRESSIVE did not pay on the claim due to have taken an impermissible "Projected Sold Adjustment".

[12] This is the claimed "market value" plus tax, license, and fees, minus the deductable.

CLASS ACTION COMPLAINT - 11

LAW OFFICES OF
STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA WASHINGTON 98402
(253) 302-5955; (253) 301-1147 FAX

1   in the sum of $7,637 using a Mitchell Market Survey Report which in turn took a deduction

2   identified as a "Projected Sold Adjustment" from the comparable vehicles.  Taking "Projected

3
   Sold Adjustment[s]" of $1,109.40 and $908.00 off the two comparable vehicles resulted in a
4
   "base value" that was $1,008.70 less, and as a result reduced what PROGRESSIVE paid Plaintiff
5
6   by the same amount.

7       2.6    In Washington, the methods and standards of practice which govern settlement of

8   total loss claims for automobiles are governed by the Washington Administrative Code

9   ("WAC"), § 284-30-391, which states in relevant part:

10

11       Unless an agreed value is reached, **the insurer must** adjust and settle vehicle
        **total losses using the methods set forth in subsections (1) through (3) of this section.**
12       **Subsections (4) through (6) of this section establish standards of practice for the**
        **settlement of total loss vehicle claims.**
13       **....**
        (2) Cash settlement: The insurer may settle a total loss claim by offering a
14       cash settlement based on the actual cash value of a comparable motor vehicle, less
        any applicable deductible provided for in the policy.
15

16        (a) Only a vehicle identified as a comparable motor vehicle may be
         used to determine the actual cash value.
17
         **(b) The insurer <u>must</u> determine the actual cash value of the loss**
18       **vehicle by using any one or more of the following methods**:
19         (i) Comparable motor vehicle: …
         (ii) Licensed dealer quotes: …
20        **(iii) Advertised data comparison: The actual cash value of two**
        **or more comparable motor vehicles advertised for sale** in the local
21       media if the advertisements meet the definition of current data as defined
        in WAC <u>284-30-320</u>(4). The vehicles must be located within a reasonable
22       distance of the principally garaged area not to exceed one hundred fifty
        miles.
23        **(iv) Computerized source: The insurer may use a computerized**
24       **source to establish a statistically valid actual cash value of the loss**
        **vehicle**. The source used must meet all of the following criteria:
25

26         (A) The source's database must produce values for at least
          eighty-five percent of all makes and models for a minimum of fifteen
27

28

CLASS ACTION COMPLAINT - 12

Law Offices of
STEPHEN M. HANSEN, P.S.
1821 Dock Street, Suite 103
Tacoma Washington 98402
(253) 302-5955; (253) 301-1147 Fax

years taking into account the values of all major options for such
motor vehicles.
      **(B) The source must produce actual cash values based on
current data within a reasonable distance of the principally
garaged area, not to exceed one hundred fifty miles.**
      **(C) The source must rely upon the actual cash value of
comparable motor vehicles that are currently available or were
available in the market place within ninety days prior to or after
the date of loss.**
      ….
    **(4) Settlement requirements: When settling a total loss vehicle claim
using methods in subsections (1) through (3) of this section, the insurer must:**
    . . .
      **(b) Base all offers on itemized and verifiable dollar amounts for
vehicles that are currently available or were available within ninety days of
the date of loss, using appropriate deductions or additions for options,
mileage or condition when determining comparability.**

Additionally, WAC 284-30-391(5) limits any further adjustments to total loss settlements to the

following:

      (5) Settlement adjustments: **Insurers may adjust a total loss settlement
through the following methods only:**
      (a) The insurer may **deduct** from a first party claim the amount of another
claim payment (including the applicable deductible) previously made to an
insured for prior unrepaired damage to the same vehicle.
      (b) Deductions other than those made pursuant to (a) of this subsection
may be made for other unrepaired damage as long as the amount of deduction is
no greater than the decrease in the actual cash value due to prior damage.
      (c) **If the claimant retains the total loss vehicle**, the insurer may deduct
the salvage value from the settlement amount, as described in subsection (4)(e) of
this section.

(emphasis added).

    2.7    As shown by the Mitchell "Market Survey Report" provided to Plaintiff, and to

the martially identical reports used to resolve the claims of all members of the proposed Class,

PROGRESSIVE did not base its total loss offer to the Plaintiff solely upon deductions for

"options, mileage or condition" nor upon "verifiable dollar amounts for vehicles that are

currently available, or were available within ninety days" as WAC 284-30-391(4) & (5) required

PROGRESSIVE to do in settling claims under the policy.  Further, as noted above, upon

Law Offices of
STEPHEN M. HANSEN, P.S.
1821 Dock Street, Suite 103
Tacoma Washington 98402
(253) 302-5955; (253) 301-1147 Fax

1  information and belief, the "Projected Sold Adjustment" deduction taken was not (a) based upon

2  actual verifiable sales that occurred within the one-hundred and eighty day window and one

3
4  hundred and fifty mile radius required by §391, or (b) upon comparable motor vehicles as

5  required by §391 nor (c) was it verifiable as required by §391, and through it by

6  PROGRESSIVE's insurance policy.

7      2.8    Plaintiff alleges that despite the specific mandates of WAC 284-30-391 which is

8  incorporated into its contractual obligations under the standard of care and its duty to follow

9  Washington law in resolving claims, as a result of its common claims practice, PROGRESSIVE

10 routinely underpays its insureds their total loss claims by deducting additional sums for a

11
12 "Projected Sold Adjustment" even though such deductions are not allowed by WAC 284-30-391

13 or its policy of insurance, nor are such deductions factually supportable or verifiable.  By these

14 practices the Defendant places its financial interests ahead of its insureds, failing to fulfil its

15 contractual obligations to its insureds and violating the WCPA.

16
17                      **III.  JURISDICTION AND VENUE**

18      3.1    This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28

19 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in

20 controversy exceeds $5,000,000, exclusive of costs and interest and any fees that might be

21 awarded; and minimal diversity exists.[13]  Plaintiff is a citizen of Washington and Defendant is a

22 citizen of Ohio (where it is headquartered).  This Court has personal jurisdiction over Defendant

23
24 because Defendant is a corporation licensed and authorized to do business in Washington and

25
26 [13] Based upon discovery in other cases, and Defendant's personal line ADP market share, Plaintiff alleges that
   PROGRESSIVE "saved" (i.e. underpaid claims) by around $5,851,000 by taking a deduction for "Projected Sold
27 Adjustment" during the six years of the proposed Class period as of the date of filing.  Given that approximately
   two-thirds of this amount is subject to trebling under the WCPA, the amounts at issue substantially exceed the
28 $5,000,000 jurisdictional requirement of CAFA.

CLASS ACTION COMPLAINT - 14

has transacted business in Washington.  This Court has personal jurisdiction over Plaintiff

because Plaintiff consents to this Court's jurisdiction.

3.2 Venue is proper in this District under 28 U.S.C. § 1391 because 34001 Pacific

Highway S., Federal Way, Washington is within this District and this is where Defendant is

located in this State, the Plaintiff's insurance claim was underpaid by PROGRESSIVE, and the

cause of action against PROGRESSIVE arose.

**IV. THE PARTIES**

4.1 Plaintiff resides in the State of Washington.  Plaintiff was insured under a policy

of insurance issued by the Defendant.  Plaintiff paid all premiums due to Defendant and

otherwise complied with all obligations under the insuring agreement.

4.2 The Defendant is a foreign insurer, domesticated in Washington, which maintains

its headquarters in the state of Ohio, and has its offices and agents in to handle claims in

Washington State, and King County, wherein it conducts ongoing business giving it continuous

and systemic contacts with this State.

**V.  CLASS ACTION ALLEGATIONS**

5.1 This action is brought as a class action under FRCP 23.  PROGRESSIVE's

conduct has been systematic and continuous and has affected large numbers of

PROGRESSIVE's policy holders over time in this State.  Plaintiff brings this class action to

secure redress for PROGRESSIVE's uniform and common practice of underpaying its first-party

insureds for their total loss claims and failing to comply with §391.  PROGRESSIVE's conduct

has been uniform throughout the Class Period.

5.2 All members of the proposed Class have fully complied with all pertinent policy

provisions to receive payment under their policies from the PROGRESSIVE, and

PROGRESSIVE has determined that coverage exists for the loss and determined the claim to be

CLASS ACTION COMPLAINT - 15

1    a total loss.  No further performance is required by any members of the proposed Class to secure

2    all available benefits provided by the PROGRESSIVE policy.

3        5.3    Plaintiff seeks certification of the following Class:

4

5        All PROGRESSIVE insureds with Washington first party personal line policies
        issued in Washington State, who received compensation for the total loss of their

6        own vehicles under their First Party (Comprehensive, Collision, and UIM)
        coverages, and who received a total loss valuation from Mitchell based upon the

7        value of comparable vehicles which took a deduction/adjustment for "Projected
        Sold Adjustment."

8

9        5.4    Excluded from the Class are (a) the assigned judge, the judge's staff and family,

10   and PROGRESSIVE employees, (b) claims for accidents with dates of loss occurring more than

11   six years before the date of filing, (c) claims where the total loss was on a "non-owed" vehicle

12   (where no insured has any ownership interest or rights in the vehicle), and (d) claims where the

13
     insured submitted written evidence supporting a different valuation, and the amount of that
14
15   different valuation submitted by the insured was paid by PROGRESSIVE to settle the total loss.

16       5.5    Membership in the Class is so numerous as to make it impractical to bring all

17   Class members before the Court.  The exact number of Class members is unknown but can be

18   readily determined from the records maintained by Defendant.  PROGRESSIVE's records,

19
     including those readily obtainable by PROGRESSIVE from its agent Mitchell, allow the
20
21   members of the proposed Class, as well as those who are then excluded to be identified with

22   precision.

23       5.6    Plaintiff is typical of member of the Class.  Plaintiff purchased a PROGRESSIVE

24   automotive policy, paid premiums, and made a claim for loss when his insured automobile was

25
26   damaged.  He filed a claim and made his vehicle available for determination and payment of the

27   loss.  PROGRESSIVE then elected to declare the vehicle a total loss but underpaid the loss based

28

CLASS ACTION COMPLAINT - 16

LAW OFFICES OF
STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA WASHINGTON 98402
(253) 302-5955; (253) 301-1147 FAX

upon a valuation obtained from a third-party vendor (Mitchell) which used criteria to underpay the loss, which was not permitted under PROGRESSIVE's contractual obligations. Plaintiff's interests in obtaining compensation for his loss (the underpayment on his claim compared to the amounts he would have received, but-for, the "Projected Sold Adjustment" discount and compensation under the WCPA) are identical to those of other unnamed members of the Class.

5.7     There are questions of law and fact common to all members of the proposed Class, which predominate over any individual issues. Included within the common questions of law and fact are the following:

a)     Whether PROGRESSIVE's use of a "Projected Sold Adjustment" discount complied with WAC §391 and as such its obligations under its policies and its obligations as an insurer under those policies;

b)     Whether PROGRESSIVE through such conduct breached its contracts of insurance with the Class Members by failing to compensate its insureds by taking a "Projected Sold Adjustment" deduction;

c)     Whether PROGRESSIVE through such conduct has violated provisions of the Washington Consumer Protection Act, RCW 19.86 *et seq*.;

d)     The amounts by which PROGRESSIVE underpaid the claims of the members of the Class by using a "Projected Sold Adjustment";

e)     Whether Plaintiff and the class are entitled to an award of treble damages;

f)     Whether Plaintiff and the class are entitled to an award of attorney's fees; and

g)     Whether Plaintiff and the class are entitled to declaratory and injunctive relief.

5.8     Plaintiff has no interests adverse to the interests of other members of the proposed Class and will fairly and adequately protect the interests of the Class.

CLASS ACTION COMPLAINT - 17

5.9     Plaintiff has retained the undersigned counsel who are experienced and competent in the prosecution of class actions and complex litigation and have extensive experience with litigation involving insurance claims practices.  Counsel have the resources and experience necessary to prosecute this case.

5.10    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Absent a class action, PROGRESSIVE's use of a computerized source which improperly underpays the actual cash value loss to its insureds will continue, and the Class members will continue to suffer damage and PROGRESSIVE's conduct will proceed without effective remedy.

5.11    Individual members of the proposed Class have little interest or ability to prosecute an individual action due to the relatively small damages suffered by each member of the proposed Class, and in nearly all, if not all cases, not knowing that PROGRESSIVE's practices in settling their total loss did to comply with the WAC regulations and as such PROGRESSIVE's obligations under the policy and that as such an underpayment exists.

5.12    This action will allow the orderly, fair, and expeditious administration of Class claims, economics of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.  A collective adjudication will allow sufficient proof and expertise to be assembled to fairly value and prove the losses at issue.

5.13    This action will present no difficulties which would impede its management by this Court as a class action and a class action is the best available means by which Plaintiff and the members of the proposed Class can seek redress for the harm caused to them by PROGRESSIVE.  An exact list of members of the proposed Class can be generated from PROGRESSIVE and its vendor's records.  PROGRESSIVE's records will also show the amounts

CLASS ACTION COMPLAINT - 18

its insureds were under-paid for their total loss claims where the amounts paid were reduced for "Projected Sold Adjustment."  As such, both liability and damages can be shown on a Class-wide basis with common evidence and then allow any recovery to be distributed to the members of the Class.

## COUNT I – BREACH OF CONTRACT

6.1     Plaintiff realleges the allegations contained in the previous paragraphs as if fully set forth herein.

6.2     Plaintiff and members of the proposed Class entered into contracts which were identical in all material respects with PROGRESSIVE.  They paid all required consideration in the form of premiums for the coverage afforded by the insuring agreement.  They complied with all conditions precedent under the policies and presented their claims.  As to each claim, PROGRESSIVE has found coverage to exist and apply and all conditions precedent to payment to be satisfied.

6.3     While it owed each member of the proposed class a duty of good faith and fair dealing, and under the standard of care for insurers and the policy itself was required to follow Washington law in adjusting losses, PROGRESSIVE breached its contract with Plaintiff and members of the Class by its failure to adjust and pay their total loss claims pursuant to the criteria set forth in §391 for adjustment of total loss claims.

6.4     As a direct consequence of the foregoing, Plaintiffs and the members of the Class have been damaged by the underpayment of their total loss claims, in an amount to be determined at trial.

## COUNT II – VOLATION OF CONSUMER PROTECTION ACT

7.1     PROGRESSIVE's actions/omissions/failure to disclose are unfair and/or deceptive trade practices that have the capacity to and do deceive consumers, as PROGRESSIVE

LAW OFFICES OF
STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA WASHINGTON 98402
(253) 302-5955; (253) 301-1147 FAX

has denied payment of benefits to Plaintiff and the class through knowingly misrepresented the basis for its total loss valuations.

7.2    PROGRESSIVE has failed to adopt and implement reasonable standards for the investigation and payment of claims, and pays claims based upon purported deductions that are neither "verifiable" nor based upon actual verifiable sales as required by WAC §391, fall outside of the geographical scope (150 miles) and time frame (90 days) required by WAC §391, and are not based upon "comparable motor vehicles" as required by WAC §391 and through it by PROGRESSIVE's insurance policy.  PROGRESSIVE has made false representations as to the characteristics and benefits of its total loss coverage and insurance policies and represented that they were of a particular standard, quality, or grade knowing they were not.

7.3    PROGRESSIVE's use of a deduction for "Projected Sale Adjustment" is a *per se* violation of the WAC.

7.4    The forgoing acts/omissions/failure to disclose have affected PROGRESSIVE insureds as a part of a repeated course of conduct, thereby affecting public interest, and also violate the provisions of the Washington Administrative Code, making them *per se* violations of the Washington Consumer Protection Act.

7.5    As a direct consequence of the foregoing, Plaintiffs and the members of the Class have been damaged in an amount to be determined at trial.

## COUNTS III & IV DECLARATORY & INJUNCTIVE RELIEF

8.1    Plaintiff brings this cause of action for himself and the class pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 seeking a declaration that, for those who maintain an auto insurance policy with PROGRESSIVE, it is a violation of Washington law and the insuring agreement with PROGRESSIVE for PROGRESSIVE to base its valuation and

CLASS ACTION COMPLAINT - 20

payment of the claim on values of comparable vehicles that have been artificially reduced by an arbitrary and unjustified "Projected Sold Adjustment" which are neither itemized or explained.

8.2     This court has the power to declare the rights of said PROGRESSIVE policyholders and those who would be insured under such policies and who may suffer similar losses in the future, as well as those who have suffered valuation-related losses.

8.3     This court has the power to enjoin further unfair/deceptive acts/practices pursuant to RCW 19.86.090.

## VI.  PRAYER FOR RELIEF

7.1     Plaintiff and the members of the proposed Class have been injured from PROGRESSIVE's breach of contract and violation of the WCPA as described above.  As a result, Plaintiff and the members of the proposed Class are entitled to, and pray for, the following relief:

1.     An Order certifying this action as a class action, including certifying each cause of action under the appropriate subsection of Fed. R. Civ. P. 23;

2.     An Order appointing Plaintiff as class representative and appointing the undersigned counsel to represent the class;

3.     A judgment for compensatory damages resulting from PROGRESSIVE's breach of its obligations under the policy in the amount of the underpayment to those with-in the proposed Class as measured by the amount by which payments were reduced by the taking of a "Projected Sold Adjustment" discount;

4.     That any judgment be trebled in accordance with RCW 19.86.090 as to those claims falling within the four-year statute of limitations;

5.     Declaratory and injunctive relief consistent with the allegations in this Complaint;

6.     A judgment for Plaintiff's attorney's fees and costs of suit;

CLASS ACTION COMPLAINT - 21

1    7.    Post-judgment interest on the judgment at the rate provided by law from the date

2  of judgment until paid; and

3    8.    Such other relief as deemed just and equitable.

4

DATED this 13th day of January, 2020.

5

6                              Law Offices of STEPHEN M. HANSEN, P.S.

7

8                              STEPHEN M. HANSEN, WSBA #15642
                               Of Attorneys for Plaintiff
9

10                             Scott P. Nealey
                               (To be admitted *Pro Hac Vice*)
11                             Law Office of Scott P. Nealey
                               71 Stevenson St #400
12                             San Francisco, CA 94105
                               Phone: 415-231-5311
13                             Fax:    415-231-5313
                               Cellular: 415-640-4806
14                             snealey@nealeylaw.com

15

16                             VERIFICATION

17       THE UNDERSIGNED verifies under penalty of perjury under the laws of the State of
18  Washington as follows:

19       That as the above-named Plaintiff, I have read the above and foregoing Complaint, and to
    the best of my knowledge the allegations contained therein are true and correct.
20

21       DATED AT  Pullmah      , Washington, this 15   of January, 2020

22

23                             AMEENJOHN STANIKZY

24

25

26

27

28

<u>CLASS ACTION COMPLAINT</u> - 22