Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMEENJOHN STANIKZY;
Plaintiff,
v.
PROGRESSIVE DIRECT INSURANCE COMPANY,
Defendant.

No.: 2:20-cv-118 BJR

ORDER DENYING DEFENDANT'S MOTION TO COMPEL APPRAISAL AND TO STAY PROCEEDINGS

## I.   INTRODUCTION

This proposed class action brings breach-of-contract and Washington Consumer Protection Act claims against Defendant Progressive Direct Insurance Company ("Progressive"). Plaintiff Amean Stanizky[1] challenges Progressive's method of calculating the value of vehicles deemed a total loss under certain auto insurance policies. The immediate issue before the Court is Progressive's Motion to Compel Appraisal and to Stay Proceedings, seeking an order compelling Stanizky to participate in the appraisal process for his total loss vehicle, outlined in his Progressive auto insurance policy, and a stay of this case pending the conclusion of that appraisal. For the reasons that follow, the Court denies the motion.

---

[1] The original Complaint lists "Ameenjohn Stanikzy" as the named Plaintiff. The Amended Complaint names "Amean Stanizky." The Court will refer to Plaintiff named in the operative, Amended Complaint.

1

## II. BACKGROUND

Plaintiff Stanizky purchased an auto insurance policy issued by Progressive. First Am. Compl. ("FAC") ¶¶ 1.1, 4.1. He alleges that on October 9, 2019, he was involved in a collision, resulting in damage to his car. *Id*. ¶ 2.1. He reported his claim to Progressive, which deemed Stanizky's automobile a total loss. *Id*. ¶ 1.4. Progressive ultimately determined that the actual cash value of Stanizky's vehicle was $8,006.30.

According to Plaintiff, the Mitchell Market Survey Report ("MSR"), on which Progressive relies for vehicle valuation, determines the actual cash value ("ACV") of totaled vehicles by averaging the "adjusted values" of purportedly comparable vehicles. *Id*. ¶¶ 1.2, 1.3. Adjusted values of the comp vehicles, in turn, are determined based on their list price, as adjusted by (among other things) a projected sold adjustment ("PSA"). A PSA is a downward adjustment to the list price expected in a typical negotiated sale—essentially, according to the MSR, "an adjustment to reflect consumer purchasing behavior." *Id*. n. 2. In Stanizky's case, the MSR reflects a reduction to the list prices of the two comp vehicles by PSAs of, respectively, $1,109.40 and $908.00. Stanizky therefore claims that his settlement was reduced by the average of these amounts, or $1,008.70.

By this putative class action lawsuit, Plaintiff challenges both Progressive's right to make this adjustment, and how that adjustment is made. Plaintiff claims that this practice violates WAC § 284-30-391(4), which enumerates what adjustments an insurer may make. Specifically, the regulation provides that an insurer must "[b]ase all offers on itemized and verifiable dollar amounts . . . using appropriate deductions or additions for options, mileage or condition when determining comparability." Plaintiff asserts that the projected sold adjustments applied to his comp vehicles are neither itemized nor verifiable, and that the law does not permit adjustments other than those explicitly set out in the regulations (*e.g.,* for mileage, condition, and, elsewhere in the regulations, unrepaired damage). Plaintiff further claims that how the amount is determined—the "black box" method of calculating the projected sold

adjustment—violates Washington law, which limits what data an insurer may use in valuing a total loss vehicle. FAC ¶ 1.8.

### III.   DISCUSSION

By this motion, Defendant seeks a stay of proceedings on the merits of Plaintiff's claims, pending an appraisal of Plaintiff's vehicle. Defendant's motion relies on an appraisal provision in the subject auto insurance policy, which provides: "If we cannot agree with you on the amount of a loss, then we or you may demand an appraisal of the loss." Decl. of Michael Johnson, Ex. A at 23, Dkt. No. 21. The provision outlines the process by which the insurer and insured would select appraisers, and in the event of conflicting appraisals, resolve any disputes between them by resort to an umpire. The provision further states, "[t]he amount of loss agreed to by both appraisers, or by one appraiser and the umpire, will be binding." *Id*.

Progressive seeks an order from the Court compelling Stanizky to participate in the appraisal process as outlined in his policy, arguing that as set forth in the complaint, the parties "cannot agree . . . on the amount of a loss," triggering Progressive's right to an appraisal. Progressive is also asking the Court to stay this case, pending the outcome of the appraisal, claiming an appraisal to Stanizky's satisfaction could obviate the need for further litigation, and/or "inform" any further proceedings. Mot. at 8.

Stanizky denies that he must submit to the appraisal process as a condition of pursuing this lawsuit. He argues that the dispute between the parties is not over the "*amount* of loss," but rather, whether Progressive may legally make the projected sold adjustments at all.[2] Relying on

---

[2] Plaintiff argues in the alternative that he need not submit to an appraisal, because the appraisal provision violates RCW 48.18.200(1)(b), which provides "[n]o insurance contract delivered or issued for delivery in this state . . . shall contain any condition, stipulation, or agreement . . . depriving the courts of this state of the jurisdiction of action against the insurer." The appraisal provision in Stanizky's insurance policy does indicate that an appraisal would be "binding." It does not, however, purport to deny this Court (or any other) of jurisdiction over this dispute. Even Defendant is asking for, at most, a stay of these proceedings, not dismissal. Furthermore, even if the appraisal were so "binding" as to deprive courts of jurisdiction over actions against the insurer, thereby violating Washington law, the policy itself contemplates such scenario, and authorizes amendment of any provision found to be in violation of the law. *See* Ex. A to Johnson Decl. at 27 ("If any provision of this policy fails to conform to the statutes of the state listed on your application as your residence, the provision shall be deemed amended to

3

the plain language of the appraisal clause, Plaintiff argues that the parties do not dispute the "amount of loss," and Progressive's right to invoke the process, therefore, is not triggered. Furthermore, an appraisal would be, according to Plaintiff, an "empty exercise," as there is no authority for the appraisers, or an umpire, to strike the projected sold adjustment step from the valuation process—essentially the relief Plaintiff seeks.

The Court agrees. This is not a dispute over whether the calculated average of the comp vehicles' PSAs should be some amount other than $1008.70; as Plaintiff notes, neither party claims that anything about this sum is incorrect. Instead, the gravamen of this lawsuit is whether Progressive may legally make the adjustments at all. Indeed, there is no claim that an appraiser would—or even could—choose not to take a PSA deduction from the list prices of the comparable vehicles. Unless it did so, the appraisal would not obviate Stanizky's claim that *any* projected sold adjustment is illegal. As Progressive itself notes, "an appraisal will not determine whether Progressive breached the policy (Count I of the Amended Complaint) or violated the Washington Consumer Protection Act (Count II), and it will not decide if Plaintiff is entitled to declaratory or injunctive relief (Counts III and IV)." Rep. at 3-4. An appraisal would therefore be an empty exercise, at least for purposes of this lawsuit. This conclusion conforms to other courts' interpretations of the appropriate role of the appraisal process in the insurance context, where the dispute is over a contract term, not the insurer's valuation of the loss. *See Mercer Intern., Inc. v. US Fidelity and Guar. Co.*, 938 F. Supp. 680, 683 (W.D. Wa 1996) ("an appraisal now would be useless — where the controversy between insurer and insured is over terms in the contract" and not the valuation amount.). A compelled appraisal and stay would therefore do nothing to advance this lawsuit towards its conclusion.

---

conform to such statutes."). To the extent an insurer attempted to rely on an appraisal as binding, thus depriving courts of review of the appraisal, such provision would therefore presumably be unenforceable. In any event, because the Court denies Progressive's motion for the reasons stated above, it need not pass judgment on the enforceability of the appraisal provision under Washington law.

IV.     CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Appraisal and for Stay of Proceedings is DENIED.

DATED this 29th day of May, 2020.

Barbara Jacobs Rothstein
U.S. District Court Judge