Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

AMEENJOHN STANIKZY;

Plaintiff,

v.

PROGRESSIVE DIRECT INSURANCE COMPANY,

Defendant.

No.: 2:20-cv-118 BJR

ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES

## I.  INTRODUCTION

This matter comes before the Court on a Motion for Award of Attorneys' Fees ("Motion") brought by Plaintiffs through their attorneys, Stephen Hansen and Scott Nealey. The fees are associated with a class action lawsuit and its settlement, which the Court approved in a separate order. *See* Final Order Approving Settlement and Judgment of Dismissal ("Final Order"), Dkt. No. 77. Having reviewed the Motion, the Declarations and Exhibits submitted therewith, and the relevant authorities, the Court finds and rules as follows.

1

## II. BACKGROUND

Plaintiffs filed their class action complaint on January 24, 2020, asserting breach of contract and Washington Consumer Protection Act violations. Dkt. No. 1. In relevant part, Plaintiffs defined the putative class (and later, the settlement class) as:

> All Progressive insureds with Washington first party personal line policies issued in Washington State, who received compensation for the total loss of their own vehicles under their First Party (Comprehensive, Collision, and UIM) coverages, and who received a total loss valuation from Mitchell based upon the value of comparable vehicles which took a deduction for a "Projected Sold Adjustment."

*See* Pls.' Mot. for Class Cert. at 1-2, Dkt No. 37; Final Order ¶ 2. Plaintiffs claimed that "in breach of its insuring agreements with Plaintiffs and members of the settlement Class, Defendant improperly failed to compensate the Plaintiffs and Settlement Class Members . . . for the full value of their total loss claims" by applying an allegedly impermissible downward "projected sold adjustment" on such claims. Final Order, ¶ 1. In the year that followed, the parties conducted class discovery and engaged in some motions practice, including the filing of a Motion for Class Certification. Before the Court had the chance to rule on that certification motion, however, the parties advised the Court that they were engaged in settlement negotiations. They requested that the Court strike the pending certification motion, and the putative class was never certified.[1]

Instead, the settlement proposed certification of a class for settlement purposes; appointment of a claims administrator; and a process for notification and payment to eligible class members who submitted valid claims. *See* Settlement Agreement, Ex. 1 to Unopposed

---

[1] In its Order Granting "Plaintiff's Preliminary Motion for Approval of Class Action Settlement," Dkt. No. 67, the Court certified a settlement class for settlement purposes only. Generally, references in this order to the "class" and "class members" are to this settlement class.

Mot. for Prelim. Approval, Dkt. No. 65-1. After the Court reviewed and gave preliminary approval of the settlement, and the parties notified the settlement class members (none of whom filed objections), the Court held a hearing and concluded the settlement was reasonable. The Court gave final approval of that settlement in open court on March 30, 2022, and issued a written order of approval on May 23, 2022.

Plaintiffs filed this Motion for Award of Attorneys' Fees on March 1, 2022. Plaintiffs claim that class counsel is entitled to an award of $4,999,460.96 (hereinafter "$5 million") in fees, and an additional $24,366.00 in costs. *See* Dkt. No. 68. The Settlement Agreement proposed a percentage-of-recovery method for calculating the fees request, and the $5 million figure represents 26% of the "Settlement Fund," defined in the agreement as a $19,228,696.06 (hereinafter "$19.2 million") "virtual common fund." *See* Settlement Agreement, ¶¶ 32, 51. This $19.2 million amount was calculated to "reflect[] a reasonable estimate of the amounts not paid by Progressive due to the use of a "projected sold adjustment" in valuing total loss vehicles." Unopposed Mot. for Prelim. Approval at 3.

The claims deadline has now passed, and apparently 5,579 claimants—nearly 20% of the 28,447 identified class members—filed a claim. According to class counsel, the average claim is approximately $740. Thus, the Court estimates Defendant's gross payment to the class (*i.e.*, before a deduction for attorneys' fees) will be approximately $4,128,460 (5,579 x $740) plus $30,000 to the three lead plaintiffs ($10,000 each); plus an estimated $100,000 in claims administration costs, for a total benefit conferred on the class of $4,258,460. During the hearing on final approval of the settlement, for reasons more fully set forth below, the Court questioned Plaintiffs' method of calculating their fees request of $5 million, and ordered additional

3

briefing. On April 22, 2022, Plaintiffs filed the Supplemental Submission on their fees request. Dkt. No. 76.

Neither Defendant, nor any member of the class, has filed an objection to Plaintiffs' fees request. On May 27, 2022, the Court held a hearing on Plaintiffs' Motion for Award of Fees, at which the Court heard from Plaintiffs' counsel in support of their request for the $5 million attorneys' fees award.

### III.   DISCUSSION

#### A. Standard for Reviewing Attorneys' Fees Request

Courts have an obligation to evaluate the reasonableness of a class action attorneys' fees request. *See* Fed. R. Civ. P. 23(e); *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) ("In awarding attorneys' fees under Federal Rule of Civil Procedure 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable."). A court must be particularly vigilant concerning the reasonableness of a fees award where, as here, a settlement agreement is negotiated prior to formal class certification. *See id.*, 654 F.3d at 946–47 ("Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement."). Such scrutiny is required even where—indeed, especially where—no objections are lodged by the opposing party. Where parties have agreed to a fees award, courts must be alert to "subtle signs that class counsel have allowed pursuit of their own self-interests . . . to infect the negotiations." *See Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003).

Reasonable fees need not be calculated with mathematical precision or rote application of formulae. *See Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1294 n. 2 (9th

Cir.1994.) ("Because a reasonable fee award is the hallmark of common fund cases, and because arbitrary, and thus unreasonable, fee awards are to be avoided, neither [the lodestar nor the percentage] method should be applied in a formulaic or mechanical fashion."). The law requires "only that fee awards be reasonable in the circumstances." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (citing *In re Wash. Pub. Power Supply*, 19 F.3d at 1294 n. 2).

### B. Whether Percentage-of-Recovery Is the Appropriate Method for Calculating Fees

In a diversity action such as this, "[b]ecause Washington law governed the claim[s], it also governs the award of fees." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). In Washington, the percentage-of-recovery approach is used in calculating fees under the common fund doctrine. *Bowles v. Washington Dep't of Ret. Sys.*, 121 Wn. 2d 52, 72 (1993). The equitable "common fund" doctrine is designed around the principle that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The justification for this approach "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost"—in other words, class members who benefit from the efforts of class counsel—"are unjustly enriched at the successful litigant's expense." *Id*. As such, the common fund approach to attorneys' fees awards is not an exception to the American Rule that the prevailing party pay its own fees; it is a "variant of the usual rule," which "permits the court to award attorneys' fees from monetary payments that the prevailing party recovered in the lawsuit." *Staton*, 327 F.3d at 967. "[T]he

size of the recovery constitutes a suitable measure of the attorney's performance." *Bowles*, 121 Wn.2d at 72.

Although the parties here did not create a true "common fund" and the settlement is more accurately described as a "claims-made" settlement, the Court nevertheless concludes that the percentage-of-recovery calculation is appropriate in this case. Class counsel obtained a tangible and substantial benefit for both their clients and for class members, of a payment averaging hundreds of dollars for each eligible class member who has submitted a claim. Under such circumstances, the Court is endowed with the equitable power to ensure that "each member of the winning party contributes proportionately to the payment" of the attorneys' fees. *Staton*, 327 F.3d at 967.

In addition, the Court concludes that the requested 26% figure is an appropriate percentage in this case. This is a mere 1% higher than the traditional "benchmark" percentage in common fund cases of 25%. *Bowles*, 121 Wn. 2d at 72 (citing *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir.1990)). Here, counsel obtained a good result for the class. While the case did not reach the class certification stage, counsel was required to conduct class discovery and some motions practice. Further justifying the upward adjustment to the benchmark, it is suggested that this action resulted in some additional, non-monetary benefit, in that Progressive stopped using the projected sold adjustment in July 2021, after the lawsuit was brought. *See Staton*, 327 F.3d at 946 (non-monetary relief maybe be "a relevant circumstance to consider in determining what percentage of the fund is reasonable as fees."). No one—neither Defendant nor any member of the settlement class—lodged an objection to the suggested percentage, and in fact 26% is the number explicitly contemplated in

the parties' Settlement Agreement. The Court therefore concludes that 26% is a reasonable percentage for calculating fees in this case.

### C. Whether Fees Should Be Based on "Virtual Common Fund" or Actual Recovery

After determining that 26% is a reasonable percentage to use in the calculation of fees, the obvious and critical question becomes: "percentage of *what*?" Plaintiffs urge the Court to apply this percentage to the "Settlement Fund," defined in the Settlement Agreement as a "virtual common fund of approximately $19,228,696.06." Settlement Agreement, ¶ 32. As noted, the parties apparently arrived at the $19.2 million figure as "a reasonable estimate of the amounts not paid by Progressive [to class members] due to the use of a "projected sold adjustment" in valuing total loss vehicles"—the total amount, essentially, that Defendant saved over the class period by applying the allegedly impermissible downward adjustment to total loss claims. Unopp. Mot. for Prelim. Approval at 3.

On closer inspection, however, it is clear that the "Settlement Fund" is not really a "fund" at all. As the Settlement Agreement makes clear, "[a]ny portion of the Settlement Fund that is not paid as a Settlement Payment, as Class Counsel fee, Class Counsel Costs, the costs of Claims administration, or as a service award, *will remain the property of Defendant* and will not be subject to the applicable escheat laws, not be considered as residual funds, and not otherwise [be] subject to the doctrine of *cy pres* or its equivalent." Settlement Agreement, ¶ 39 (emphasis added). In other words, the Settlement Agreement did not create a fund, and Progressive has not made a payment of $19.2 million (or of any amount) to a third party to hold in trust awaiting the receipt and approval of class claims. *See Staton*, 327 F.3d at 969, and cases cited therein ("Under regular common fund procedure, the parties settle for the total amount of

the common fund and shift the fund to the court's supervision."). In this case, $19.2 million is simply a theoretical figure, chosen by the parties as an estimate of the extreme upper limits of Progressive's exposure in this lawsuit. Calling this number a "fund" does not make it one.

Fees calculated based on the percentage-of-recovery method should fairly reflect the performance of the attorneys, as measured by the actual benefit conferred on the class. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 942. The way the settlement here is structured, $19.2 million represents the benefit to the class if and only if 100% of class members were to submit and prevail on their claims, an event that all experienced counsel in this case knew was not going to happen. *See Briseno v. Henderson*, 998 F.3d 1014, 1020 (9th Cir. 2021) ("Spoiler alert: that never happens — not even close."); *see also* Pls.' Supp. Br. at 2, n.1 (claims rate in this case of 20% "is a **very high rate of claims submission** in a consumer class action case. A September 2019 Federal Trade Commission Staff Report which analyzed claims made settlements in Federal Court found . . . [a]cross all cases in our sample requiring a claims process, the median calculated claims rate was 9%.") (emphases in original). The deadline for submitting claims having now passed, and an estimated 20% of members having made claims, it becomes starkly evident just how unrealistic the $19.2 million figure is.

The Court therefore concludes that it is an irrelevant number by which to judge the attorneys' performance, and thus not one on which to base the award of fees. Instead, Class Counsel is entitled to 26% of the actual benefit conferred on the class. *See Briseno*, 998 F.3d at 1021 (reversing fees award that was based in part on amount of defendant's "potential liability" where fraction of class actually made claims); *see also Ferrer v. CareFirst, Inc.,* 2019 WL 11320974, at *6 (D.D.C. Sept. 30, 2019) 2019 WL 11320974 *7 ("[T]he actual value conferred

on the class, not the potential, pie-in-the-sky recovery, more closely resembles class counsel's actual success."). While the actual benefit conferred on the class is not yet precisely known, it is expected to be approximately $4.26 million.[2]

Basing the calculation of the fees award on the total amount of benefit conferred on the class is consistent with the justification of the equitable common fund doctrine, which is designed to "ensure[] that each member of the winning party contributes proportionately to the payment of attorneys' fees." *Staton*, 327 F.3d 938, 967 (9th Cir. 2003); *see also Boeing Co.*, 444 U.S. at 478 (percentage-of-recovery method "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense."). Awarding a fee based on the claims made avoids "distort[ing] the reality of the actual payment that [defendant] will make to the class" and is therefore a fair allocation of the costs and benefits attending this putative class action. *Tait v. BSH Home Appliances Corp.*, 2015 WL 4537463, at *6 (C.D. Cal. July 27, 2015) (Ninth Circuit law "supports the view that proportionality should be determined with reference to the actual amount paid to the class.") (citing *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015), in which Ninth Circuit reversed the district court's approval of a fees award of 25% of $4.5 million, the maximum amount defendant made available to claimants, when less than 8% of the class submitted timely claims).

---

[2] As noted above, § II., $4.26 million was calculated as follows: Plaintiffs represented to the Court that 5,579 claims have been received, with an average claim of $740 gross, before a reduction for fees and costs; by the Court's calculation, then, the total gross payout to the class will be approximately $4,128,460, plus $30,000 in awards to class representatives, plus an estimated $100,000 in class notification and claims administration costs paid by Defendant. *See* Pls.' Supp. Br. at 1.

None of the cases that Plaintiffs cite for their position that the award should be based on $19.2 million involves a fund as illusory as the one contemplated here. In *Boeing Company v. Van Gemert*, for example, "the named respondents have recovered a *determinate fund* for the benefit of every member of the class whom they represent." 444 U.S. at 479 (emphasis added). While the Supreme Court affirmed assessment of fees against an entire fund, and not just the amount class members eventually claimed, "[t]he District Court's judgment first ordered Boeing to pay a specified sum to the entire class and then assessed undetermined attorney's fees against the entire fund created by the judgment. The judgment on the merits stripped Boeing of any present interest in the fund." 444 U.S. at 482, n. 7. Indeed, the *Boeing* Court explicitly noted that it "need not decide whether a class-action judgment that simply requires the defendant to give security against all potential claims"—effectively how the settlement is structured in this case—"would support a recovery of attorney's fees under the common-fund doctrine." 444 U.S. at 479, n. 5; *see also* 5 Newberg on Class Actions § 15:70 (5th ed.) ("In *Boeing*, however, the Court assumed that the defendant's liability was not contingent on claims made, making the precedent somewhat inapposite to the valuation problem created by reversionary and claims-made settlements.").

Similarly, in *Six (6) Mexican Workers v. Arizona Citrus Growers*, on which Plaintiffs also rely, the district court "ordered that any unclaimed funds be distributed through a *cy pres* award to the Inter–American Fund for indirect distribution in Mexico." 904 F.2d at 1304; *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1046 (9th Cir. 2002) ("The agreement required Microsoft to deposit $96,885,000 into a settlement fund, to be distributed to the class members after payment of incentive awards, costs, and fees."). In each of these cases, the

10

settlement fund was not, as here, merely a hypothetical sum calculated by the parties; it was actual money, of which the defendant lost possession—in at least some of these cases, permanently.

In *Williams v. MGM-Pathe Communications Company*, the Ninth Circuit reversed a fees award based on the actual claims made, rather than the entire reversionary fund created for the class. 129 F.3d 1026, 1026 (9th Cir. 1997). As in the other cases discussed above, the parties in *Williams* appear to have created an actual fund. Furthermore, as Plaintiffs here acknowledge, the facts of *Williams* make it an "extreme case." Pls.' Supp. Br. at 7. In *Williams*, the Ninth Circuit held that the "district court should have calculated [class counsel's] fee as one-third of the entire $4.5 million settlement fund, for a fee of about $1.5 million, rather than calculating it as one-third of the [$10,000 that class members claimed] against that fund, for a fee of only $3,300." *Id*. The $3,300 fee that the district court had awarded in *Williams* was unreasonably small on its face, making it distinct from the instant case, in which the Court is awarding Plaintiffs' counsel over three times their lodestar amount. Moreover, the *Williams* panel reversed the $3,300 award but importantly, also indicated that on remand, a lodestar award would be appropriate, an approach that in this case would result in a far *smaller* award than either the Court or Plaintiffs deems adequate. *See infra* § III.D.

Casting additional doubt on the enduring value of *Williams* as applied to the facts of this case, in 2018 Congress and the Supreme Court amended Federal Rule 23(e)(2), making clear that courts have an obligation to scrutinize *all* terms of a class action settlement agreement for fairness, including, explicitly, the "terms of any proposed award of attorney's fees." *Briseno*, 998 F.3d at 1024 (citing Fed. R. Civ. P. 23(e)(2)). The Ninth Circuit since *Williams* has also

11

repeatedly emphasized the importance of this heightened scrutiny.[3] *Id.*; *see, also, e.g., In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) ("[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."). In *In re Bluetooth*, the Ninth Circuit identified three signs in particular that call for such scrutiny: "(1) when counsel receive a disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing' arrangement (i.e., an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed [funds] to the defendant." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019) (quoting *Allen*, 787 F.3d at 1224; *In re Bluetooth*, 654 F.3d at 947).

Variations on all three of these signs are present here. If the Court were to approve the entire amount the Plaintiffs request, the resulting award of $5 million would surpass the net payment to the class by nearly two million dollars, and be more than 60% of the total amount for which Defendant will ultimately be liable, a "disproportionate distribution of the settlement" by most measures. *See Roes, 1-2,* 944 F.3d at 1051 (reversing award where "more of the available $2 million in settlement cash ultimately went to attorneys' fees ($950,000) than would be distributed to class members ($864,115)"). The implicit but unmistakable "clear sailing" provision is found in the Settlement Agreement at ¶ 51, wherein Defendant agreed that "Class Counsel will not ask the Court for attorneys' fees in any amount beyond 26% of the Settlement Fund and out-of-pocket costs of up to $24,366." *See also* Mot. for Fees at 2

---

[3] Given these recent amendments to Federal Rule 23 and the concerns expressed in Ninth Circuit cases decided since *Williams*, which highlight the district courts' duty to carefully examine fees awards in class action settlement agreements, it is clear that the facts of *Williams* make that case an outlier, and that its holding should be carefully and narrowly construed.

("Progressive does not oppose the relief requested in this motion as it is consistent with the parties' Settlement Agreement."). And here, unclaimed "funds" do not merely "revert" to Defendant; they in fact never leave Defendant's possession.

Finally and perhaps most importantly, the Court finds that a $5 million fee is simply not "reasonable in the circumstances." *In re Wash. Pub. Power Supply*, 19 F.3d at 1294 n. 2. This conclusion is reached by comparing the final fees award to the class recovery (*see supra*), to the lodestar amount of approximately $390,000 (*see infra*), and to the factors articulated in *Vizcaino*, including the good but not "exceptional" results achieved for the class; the relatively modest risk posed in bringing this case given Plaintiffs' counsel's repeated prior successes on "parallel cases"; and the relatively short duration of this matter, which was in active litigation for scarcely over a year and never even reached the class certification stage.[4] 290 F.3d at 1050. Thus, even if the Court were to use the $19.2 million "virtual settlement fund" to measure the fees, it would be obligated to impose an equitable remittitur on the final award.

For the foregoing reasons, the Court concludes that a percentage-of-recovery award of attorneys' fees and costs to class counsel is appropriate. That award shall be 26% of the benefit actually conferred on the class, best estimated to be approximately $4.26 million including claims payouts, attorneys' fees, service awards, and costs, for a total fees award of $1,107,199.60, plus out-of-pocket costs of $24,366, for a total award to class counsel for fees and costs of $1,131,565.60.

---

[4] The original complaint was filed on January 24, 2020; the parties notified the Court of a pending settlement on May 18, 2021.

### D. Reasonableness and Lodestar Cross-Check

Having concluded that an award of approximately $1.13 million is appropriate under the percentage-of-recovery method, the Court is next obliged to assess the reasonableness of that award as cross-checked against the lodestar. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015). Under the lodestar method, the court multiplies the number of hours counsel "reasonably spent on litigation by a reasonable hourly rate to determine a presumptively reasonable fee award." *Kim v. Allison*, 8 F.4th 1170, 1180–81 (9th Cir. 2021) (citations omitted). While the result is "presumptively reasonable," "the court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors, including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment," with an emphasis on the benefit obtained for the class. *In re Bluetooth Headset*, 654 F.3d at 941–42 (citations omitted).

On the request of the Court, Plaintiffs' attorneys have submitted time sheets and declarations supporting their lodestar claim, which totals approximately $390,000. Attorney Stephen Hansen has averred that he kept "contemporaneous records for contingent fee work such as this case." Hansen Decl., ¶¶ 4, 5. His records reflect 137.50 hours devoted to litigating this case, at a rate of $300/hour for himself, and $100/hour for, presumably, a paralegal. *See* Ex. 1 to Hansen Decl. Attorney Scott Nealey has also submitted a declaration and time records, reflecting 328 total hours spent working on this case, at varying hourly rates of $1000 for 2022;

14

$975 for 2021-2020; and $950 for 2019.[5] Having reviewed the time sheets and declarations submitted by these attorneys, the Court concludes based on factors discussed elsewhere in this order (including the risks, complexity, and duration of the case, experience of the attorneys, and results for the class) that both the amount of time spent, and the rates claimed, are reasonable, and that the lodestar is also therefore reliable.

Based on this lodestar, the Court's award of $1.1 million represents a multiplier of nearly 3, which the Court finds is acceptable in this case. This multiplier is squarely within—indeed, on the high end of—the range of multipliers recognized in this circuit as reasonable. *See Hopkins v. Stryker Sales Corp.*, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013) ("Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases.") (citation omitted); *see also Vizcaino*, 290 F.3d at 1051 n. 6 (finding that, in approximately 83 percent of the cases surveyed by the court, the multiplier was between 1.0 and 4.0 with a "bare majority ... 54% ... in the 1.5—3.0 range"). As counsel stated at the hearing, they took this case on a contingency basis, exposing themselves to the risk of total nonpayment. Furthermore, the matter appears to have been handled efficiently, led by counsel with substantial experience litigating the types of claims at issue here, and was settled at a relatively early stage, which the Court is pleased to reward. The lodestar cross-check, using an appropriate multiplier of 3, confirms that the $1.13 million award is reasonable.

---

[5] The appropriate rate should be compared to that of the relevant forum, the Western District of Washington; not the Northern District of California, as Nealey has proposed here. *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) ("[W]hen determining a reasonable hourly rate, the relevant community is the forum in which the district court sits."). However, given that Attorney Hansen has substantially understated his billing rate as $300/hour, when his actual billing rate is $500, the Court estimates that the two inaccuracies fairly cancel each other out.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART Plaintiffs' Motion for Award of Fees and Costs, and hereby awards class counsel fees and costs of 26% of $4,258,460 (calculated from (5,579 x $740) + $30,000 + $100,000), plus $24,366 for out-of-pocket costs, for a total award of $1,131,565.60.

DATED this 2nd day of June, 2022.

Barbara Jacobs Rothstein
U.S. District Court Judge